# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| MICHAEL J. LISTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. |
| | ) |
| DAVID KIM and CALIBER CAPITAL | ) |
| GROUP, LLC, | ) |
| | ) |
| Defendants. | ) |

_____ ____ )

## COMPLAINT

1.  Plaintiff brings this action pursuant to 18 U.S.C. § 1964(c) for threefold the injury to his business or property, plus costs including reasonable attorneys' fees, resulting from defendants' control of and/or participation in a RICO enterprise through a pattern of racketeering activity in violation of 18 U.S.C. § 1962(c).

2.  The plaintiff Michael J. Liston ("Liston") is an individual residing in Cambridge, Middlesex County, Massachusetts.  Liston is an attorney, duly admitted to practice in the Commonwealth of Massachusetts and before the United States District Court for the District of Massachusetts.  Liston is engaged in the business and practice of law with an office in Boston, Suffolk County, Massachusetts.

3.  The defendant David Kim ("Kim") is an individual residing in the state of California.  Kim acquires and operates several businesses with other investor participants whose identities Kim avoids disclosing and whose identities are not

1

yet known to plaintiff.  The businesses are acquired and operated through a series of limited liability corporations which Kim controls from an office located at 2000 East Winston Road, Anaheim, California.  The acquisition and operation of the businesses require the services of attorneys.

4.  The defendant Caliber Capital Group, LLC ("Caliber") is a limited liability corporation organized under the laws of the state of Nevada with its principal place of business at 2000 East Winston Road, Anaheim, California.  Kim is the managing member of Caliber and as such controls its operation.  On information and belief, Caliber is a principal instrument in various Kim controlled business interests.

5.  Among other corporations that were used for the operation of Kim controlled businesses are KaBloom Flowers LLC ("KaBloom Flowers"), and KaBloom Flowers Franchising LLC (KaBloom Franchising").

6.  Each of Caliber, KaBloom Flowers, and KaBloom Franchising were limited liability corporations organized under the laws of the state of Nevada with principal places of business at 2000 East Winston Road, Anaheim, California.  Kim was the managing member of each corporation and, as such, controlled its operation.  Caliber was the acquisition instrument of two Massachusetts based Delaware corporations engaged in the retail sale of flowers, through franchisees and otherwise, from locations throughout the United States. KaBloom Flowers and KaBloom Franchising operated the acquired business after the acquisition.  Kim controls other businesses in similar fashion, that is, through limited liability corporations of which he is the managing member all operating from 200 East Winston Road, Anaheim, California.  Among the employees, and sometimes the officers, of  the limited liability corporations Kim controls are James Walker ("Walker") and Adrien Poirier ("Poirier").

7.  Kim is a person within the meaning of 18 U.S.C. § 1961(3).

8.  Caliber is a person within the meaning of 18 U.S.C. § 1961(3).

9.  Caliber, KaBloom Flowers, and KaBloom Franchising and associated individuals and entities, including Kim, Walker and Poirier, constitute an enterprise ( the "KaBloom Enterprise") within the meaning of 18 U.S.C. § 1961(4). At all times relevant the KaBloom Enterprise was engaged in, or its activities affected, interstate commerce.

10.  Kim caused the KaBloom Enterprise to engage the services in Massachusetts of a major Boston law firm, Mintz Levin Cohn Ferris Glovsky and Popeo ("Mintz Levin") in connection with the acquisition of the Massachusetts based flower business through Caliber and in connection with the operation of the flower business acquired ultimately by KaBloom Flowers and KaBloom Franchising.  In turn, on information and belief, the KaBloom Enterprise directed Mintz Levin to engage lawyers in jurisdictions other than Massachusetts to deal with KaBloom Enterprise matters in those jurisdictions.   Notwithstanding the request for and the receipt of continuing legal services from Mintz Levin and from the lawyers in jurisdictions other than Massachusetts, the KaBloom Enterprise failed to make payments on the bills received but nonetheless continued to seek and to receive additional services.

11.  As part of its services, Mintz Levin had represented Kim, Walker, Caliber, KaBloom Flowers and KaBloom Franchising in litigation in the Massachusetts Suffolk County Superior Court brought by the predecessor flower business corporations and two of their principals.  As the result of the failure of the KaBloom Enterprise to pay the bills for this legal representation, Mintz Levin was permitted to withdraw as defendants' counsel.  Mintz Levin subsequently brought suit against Kim, Caliber, KaBloom Flowers, and KaBloom Franchising for payment for the services rendered the KaBloom Enterprise in connection with the referenced litigation and for services rendered in connection with the acquisition of

the flower business in an amount exceeding $300,000.  On information and belief, the KaBloom Enterprise did not pay at all, or did not fully pay, the attorneys in jurisdictions other than Massachusetts for services rendered to the KaBloom Enterprise in those other jurisdictions.

12.  When Mintz Levin brought suit against Kim and others comprising or associated with the KaBloom Enterprise for the fees owed, the KaBloom Enterprise, controlled by Kim, engaged a Boston law firm to defend.  On information and belief, this firm obtained a retainer but continued to provide services after the retainer was exhausted which the KaBloom Enterprise agreed to pay.   Notwithstanding its acceptance of services from this law firm on promises, actual or implied, to pay for them, the KaBloom Enterprise, controlled by Kim, failed and refused to make any payments beyond the original retention.  On information and belief, amounts in excess of $10,000 are due this law firm for their services.  On information and belief, at least in part for that reason, the law firm withdrew from representing the KaBloom Enterprise interests.  On information and belief, the KaBloom Enterprise has failed and refused to pay the balance due the law firm.

13.  When Mintz Levin was permitted to withdraw from the Suffolk Superior Court litigation, Kim caused the KaBloom Enterprise to engage Liston's services in connection with that litigation and related subsequent federal litigation. The parties Liston represented in both the Suffolk Superior Court litigation and the federal litigation were Kim, Caliber Walker, KaBloom Flowers and KaBloom Franchising.  Liston did not seek or obtain a retainer, but sent periodic, usually monthly, bills for services rendered and disbursements incurred.  No bills sent were ever challenged, but despite assurances from Kim and others associated with the KaBloom Enterprise that unchallenged bills would be paid within thirty days of

receipt, timely payments were never made.  The persistent delays in payment produced at least one heated telephone conversation between Liston and Kim.

14.  The last payment made to Liston was on or about January 9, 2008.  The payment covered a series of bills rendered for services and disbursements in August, September and October of 2007.  At the time of this January 9, 2008, payment an additional bill had been sent in December, 2007 for services in November, 2007.  The litigation for which Liston was engaged was winding down with a looming trial date as well as ongoing settlement negotiations.  In February, 2008, Liston sent a bill for services rendered in December 2007 and in January, 2008 which included the balance already overdue for services in November, 2007. Kim, Caliber and the KaBloom Enterprise knew that continuing services from Liston were required to resolve the litigation, either by trial or settlement.  Kim, through, Poirier and Walker, continued to assure Liston that he would be paid for his services.   In March of 2008, Liston sent a final bill which included the balances overdue on the preceding two bills.  The litigation had been settled and the settlement required only an expected Bankruptcy Court approval.  The total amount of the final bill was $9,850.00.  The bill was fair and reasonable for the services rendered and never challenged for any reason.  Despite a series of demands, the final bill was ignored.

15.  Kim, from experience, and therefore also Caliber, were aware that attorneys who enter appearances in litigation cannot easily, or without court approval, withdraw from representation.  On information and belief, Kim, through experience, and therefore also Caliber, were aware that attorneys are reluctant to bring suit for unpaid fees.

16.  On information and belief, the KaBloom Enterprise, controlled by Kim and in which Caliber participated, engaged Mintz Levin and obtained its services by promises, actual or implied, to pay for those services but with the undisclosed

intention of not paying for the services or paying only partially for those services. The KaBloom Enterprise received the services. The KaBloom Enterprise, controlled by Kim and in which Caliber participated, deliberately, intentionally, and contrary to its promises failed to pay fully for the Mintz Levin services. On information and belief, the litigation brought by Mintz Levin for its fees was recently settled for substantially less than the amount actually owed.

17.   On information and belief, the KaBloom Enterprise, controlled by Kim and in which Caliber participated, engaged the services of attorneys in jurisdictions other than Massachusetts through Mintz Levin, on promises, actual or implied, that payment would be made for the services rendered.  On information and belief, the KaBloom Enterprise requested and received the services of attorneys in jurisdictions other than Massachusetts with the undisclosed intention of not paying for the services or paying only partially for those services.  The KaBloom Enterprise received the services of these attorneys in other jurisdictions.  On information and belief, the KaBloom Enterprise, controlled by Kim and in which Caliber participated, deliberately, intentionally, and contrary to its promises failed to pay for the services.

18.   When the KaBloom Enterprise, controlled by Kim and in which Caliber participated, engaged the Boston firm to represent it in the litigation brought by Mintz Levin to collect its fees, on information and belief it obtained the services of this Boston law firm by promises, actual or implied, to pay for those services but with the undisclosed intention of not paying for the services or paying only partially for those services.  The KaBloom Enterprise received the services. The KaBloom Enterprise, controlled by Kim and in which Caliber participated, deliberately, intentionally, and contrary to its promises failed to pay fully for the Boston law firm's services.

6

19.  As set forth in the preceding paragraphs 13 and 14, the KaBloom Enterprise, controlled by Kim and in which Caliber participated, made continuing promises to Liston in order to secure his continuing services.  On information and belief, the KaBloom Enterprise, controlled by Kim and in which Caliber participated, did not at the time of the promises intend to pay Liston fully for his services.  Liston provided services for which he was promised payment.  The KaBloom Enterprise, controlled by Kim and in which Caliber participated, deliberately, intentionally and contrary to its promises failed to pay fully for Liston's services.

20.  The conduct set forth in the preceding four paragraphs, in each instance, involved the use of wire communications and constituted a violation of 18 U.S.C. § 1343.  Each instance of such conduct constituted a racketeering activity within the meaning of 18 U.S.C. § 1961 (1). Together such conduct constitutes a pattern of racketeering activity within the meaning of  18 U.S.C. § 1961(5).  Kim who controls and therefore participates in the conduct of the KaBloom Enterprise and Caliber who participates in the conduct of the KaBloom Enterprise have each violated 18 U.S.C. § 1962(c) and Liston has been injured in his business or property by reason of the violation in the amount of $9,850.00.

WHEREFORE, Liston demands judgment against Kim and Caliber, jointly and severally, for threefold his injury — $29,550.00 — plus interest, costs and reasonable attorneys' fees.

s/ Michael J. Liston

_____

Michael J. Liston BBO# 301760
2 Park Plaza, Suite 610
Boston, MA  02116
(617) 426-2281

Dated;  April 21, 2010

PLAINTIFF DEMANDS TRIAL BY JURY ON ALL ISSUES SO TRIABLE